MADDOX v. REYNOLDS.

Opinion delivered May 28, 1904.

1. INSTRUCTION—WHEN MISLEADING.—Where the evidence showed that a stock of goods was a miscellaneous stock kept for retail, and it is evident that they were subject to division, it was error to leave it to the jury to determine whether the goods were subject to division. (Page 445.)

2. FRAUD—INNOCENT PURCHASER.—To entitle one to protection as an innocent purchaser of goods sold in fraud of the vendor's creditors, he must have paid for them before he had knowledge of the fraud. (Page 445.)

3. SAME—NOTICE.—The fact that a stock of goods purchased by defendant was attached in his hands before he had paid for them, as being the property of a former owner who had sold them, was sufficient to put him on inquiry as to whether there was fraud in such sale. (Page 445.)

Appeal from Van Buren Circuit Court.

ELBRIDGE G. MITCHELL, Judge.

Action by J. W. Reynolds against W. S. Maddox. Plaintiff recovered judgment, from which defendant appealed. Reversed.

STATEMENT BY THE COURT.

During and prior to the month of November, 1896, one Lucy Neeley, as surviving partner of the firm of J. M. Bradford & Co., was doing a mercantile business at Cleveland, in Conway county. At that time her stock of goods was worth about $800, and the firm's liabilities were about $1,800. Among the liabilities on November 24, 1896, was a note given to one R. J. Steel for about $275, not yet due. On that date she sold her entire stock of merchandise to him for about $800, taking up her note, and Steel paying to her the remainder of the purchase money. Steel next day sold a large amount of the goods to appellee. Creditors immediately sued out attachments in Conway county, directed to the sheriff of Van Buren county, where the goods were taken. Appellant, as sheriff, seized the goods under the writs, part being taken from appellee, and appellee sued in replevin, and the creditors of Lucy Neeley, plaintiffs in the attachment suits, are making the defense for the sheriff.

The complaint, an ordinary complaint in replevin, alleges the value of the goods to be $731.21, and that the defendant had, as sheriff, wrongfully levied upon and taken said goods from his possession. The affidavit for replevin sets out a list of the goods, and alleges that the property was taken under attachments against Lucy Neeley. Writ was issued, bond was given, and property delivered to plaintiff (appellee).

Defendant (appellant) answered. He admitted possession by appellee, and justified the taking under several writs of attachment, and specifically charged the sale under which appellee held to be fraudulent, and that he bought with notice of the fraud.

On the first trial appellee obtained a verdict. Appellant appealed. The case was reversed July 13, 1901. Mandate was filed August 24, 1901.

It was proved and admitted that writs of attachment, as alleged in appellant's answer, were issued to the appellant as sheriff of Van Buren county, from the circuit court of Conway county, for the aggregate sum of $1,097.96 against the property of Lucy Neeley, as surviving partner of J. M. Bradford & Co., and levied upon the property in controversy in this suit, and that judgment was rendered upon said suits in Conway county, and the said attachments sustained. It was further proved and admitted that in levying the attachment the defendant took the property from the plaintiff, who had bought it from R. J. Steel, who had bought it from the said Lucy Neeley, who was the surviving partner of the firm of J. M. Bradford & Co., and that it was a part of the said Lucy Neeley's retail stock of merchandise. The proof showed that the said Lucy Neeley owed the said R. J. Steel about $275; that a few days before the debt became due he bought a stock of goods from her, consisting of about $800 in cash value, as they estimated it, for which he delivered her her note and paid the balance in cash; that at the time of the sale she owed, including the debt to Steel, about $1,800, none of which has been paid except Steel's debt, and that she was made insolvent by the sale of the stock of goods, which was a general retail stock of merchandise, kept by her for sale as such until the sale to Steel; that the next day after Steel bought the goods, he sold about $700 worth to appellee, who knew that they were a part of the Lucy Neeley

stock of goods. The proof also showed that none of the purchase money was paid by appellee until after the service of the writs of attachment upon him, and the goods in controversy had been taken from his possession thereunder, and that said attachments have been since sustained in the Conway circuit court. The proof further tended to show that the sale by Lucy Neeley was made to defraud her creditors, and that Steel knew of it, or knew of sufficient facts to put him on inquiry. Also that appellee bought with knowledge of the fraud, or with knowledge of sufficient circumstances to put him on inquiry. This was all the evidence.

The court, over the objection of the appellant, gave to the jury instructions Nos. 4 and 8, to which the appellant excepted, and made the giving of them a ground of his motion for new trial; and also the court, on motion of the appellant, refused to give to the jury instruction No. 2, asked by the appellant, to which the appellant also excepted, and makes such refusal a ground of his motion for new trial. Said instructions are as follows:

"4. The court further instructs you that, although you may find that Mrs. Neeley or her agent sold said goods with the fraudulent intent to cheat, hinder or delay the creditors of J. M. Bradford & Co. in the collection of their debts, and that Dr. Steel had sufficient knowledge to put him on inquiry, or, even if he had full knowledge of his fraudulent intent, this still would not authorize you to find for the defendant, Maddox, provided that you should further find that Dr. Steel made the purchase in good faith, and paid a reasonably fair price therefor, in order to collect a debt due him from the said Mrs. Neeley for money loaned her to be used in the business carried on by the firm of Bradford & Co., of which she is a member, and that Dr. Steel believed that it was necessary to make such purchase in order to collect said debt, and that a reasonably prudent man situated as he was would have so believed, and that he made the purchase for that purpose alone, and that the goods in their character were not subject to division, and that he bought no more than was necessary to collect his debt. If the goods were sold fraudulently by Lucy Neeley or her agents, plaintiff or R. J. Steel could not acquire title to them unless the purchase price was a reasonably fair one, and was paid before they knew of the fraud, or had knowledge or information

sufficient to put a reasonably prudent person upon inquiry as to such fraud."

"8.  J. W. Reynolds claims that he bought the goods in good faith from Dr. Steel.  The presumption is in favor of the good faith of the trade, and this presumption remains in favor of the legality of the trade until overturned by a preponderance of the evidence showing, first, that the sale of the goods by Lucy Neeley to Dr. Steel was a conspiracy entered into between Lucy Neeley and Dr. Steel to cheat, hinder or delay; the creditors of Lucy Neeley, or that Lucy Neeley, by herself or agent, sold the property for the purpose of cheating, hindering or delaying her creditors, and that this fact was known to Dr. Steel, or that he had knowledge of such facts as would put a reasonably prudent man upon inquiry.  Then, second, you must further find that the plaintiff, J. W. Reynolds, knew these facts at the time he bought from Dr. Steel.  But I further instruct you that if you find that he, the plaintiff, bought the goods in good faith from Dr. Steel, and honestly believed at the time that Dr. Steel was the true owner of the goods, and that a reasonably prudent man situated as he was would have so believed, then you will find for the plaintiff, notwithstanding that you may find that the sale made by Lucy Neeley to Dr. Steel was made to cheat, hinder or delay the creditors of Lucy Neeley, and that Dr. Steel knew that fact, or had sufficient knowledge to put him on inquiry."

Defendant separately objected to instructions Nos. 4 and 8, and, each one being given over his objection, he at the time separately excepted.  And defendant then asked the court to so modify instruction No. 8 as to state that, before the plaintiff would be entitled to protection as a purchaser of the goods sold by Lucy Neeley to defraud her creditors, if R. J. Steel had notice sufficient to bind him, the plaintiff would have to pay for the goods before he had knowledge of such fraud.  And, the court refusing the modification asked, defendant excepted.

The appellant asked the following instruction: "2. If the plaintiff knew the goods he bought were of the stock sold by Lucy Neeley or her agent to R. J. Steel, and before he paid any part of the purchase money the goods or any part of them were attached and taken out of his hands as the property of Lucy Neeley, that was sufficient to put him on inquiry, and he could

not thereafter become an innocent purchaser, without making all the inquiry reasonably within his power." And, the court having refused to give said instruction so asked by defendant, defendant excepted to its refusal to give same.

The verdict and judgment were for plaintiff.

*Carroll Armstrong, Sellers & Sellers,* for appellant.

In jury trials, where the evidence is not legally sufficient to sustain a verdict, it is the duty of the court to declare the law. 57 Ark. 461. Abstract instructions are erroneous. 54 Ark. 336; 41 Ark. 382; 42 Ark. 57; 28 S. W. 160; 2 Ark. 308; 16 Ark. 651; 69 Ark. 380; 63 Ark. 108, 177. A refusal to sell less than the whole stock is, of itself, sufficient to put the purchaser on inquiry. 69 Ark. 541; 64 Ark. 380; 47 Fed. 758; 6 S. W. 560; 16 S. W. 1012; 30 Kan. 693; 82 Mo. 518. The buying of more than enough to pay the debt, without an explanation which the law recognizes as sufficient, is a conclusive badge of fraud. 23 Ark. 264; 51 Kan. 547; 15 Tex. 188; 93 Ala. 59; 107 Mo. 635; 79 Ala. 171; 39 W. Va. 644; 70 Tex. 47; 40 Mo. App. 136. Instruction No. 8 is erroneous. 14 Ark. 69; 50 Ark. 314; 55 Ark. 579; 58 Ark. 446; 64 Ark. 373. It is the time of paying, and not of buying, that fixes the time at or before which notice of the fraud must be had. 19 Ark. 566; 1 Benj. Sales, c. 2. Notice at any time before payment is sufficient to defeat the defense of innocent purchasers. 32 Ark. 257; 66 Pac. 284; 12 Ark. 286, 552; 13 Ark. 190; 14 S. W. 700; 77 Mo. 532; 73 Mo. 485; Big. Fraud, 473. Instructions Nos. 1 and 8 are contradictory. 55 Ark. 393; 59 Ark. 105. Attachment of goods while in purchaser's hands is conclusive notice of another's claim. 7 S. W. 293; 73 Mo. 485; 77 Mo. 532; 11 Pac. 428; 5 Mich. 404; 39 Mo. App. 25.

*Sam W. Simpson, J. H. Fraser, Tom T. Dickinson,* for appellee.

A debtor may sell more than sufficient to pay his debt, when a less quantity cannot be sold without material injury to remaining portion unsold. 64 Ark. 184, 380. If a fraudulent purchaser has sold property to a *bona fide* purchaser, and the *bona*

*fide* purchaser yet owes for the property, the money may be followed and subjected in his hands. 41 W. Va. 275. If the sub-vendee is an innocent purchaser, he can be held only as an equitable vendee. 43 Ark. 84. A sale of personal property is complete by delivery. 19 Ark. 566.

Hughes, J. (after stating the facts). Instruction No. 4 is incorrect in this, that it leaves to the jury the question of whether the "goods in their character were not subject to division," because the evidence showed the stock of goods was a miscellaneous stock kept for retail, and it is evident that they were subject to division, there being no evidence to the contrary.

The court erred in refusing to modify instruction No. 8, as asked by the appellant, and also in refusing to give instruction No. 2, as asked by the appellant. We cannot well imagine what would be better notice of the claim of another to the property in controversy than the seizure of it under an attachment. If the principle announced in the modification asked by the appellant of No. 8 may be said to have been included substantially in another instruction that had been given, nevertheless instruction No. 8, without this modification, announced a different doctrine, and was contradictory, and was not proper without modification.

For errors indicated, the judgment is reversed, and the cause remanded for new trial.